UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| JAMES HEYMAN, individually and on behalf of all similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>LINCOLN NATIONAL LIFE INSURANCE COMPANY,<br><br>Defendants. | Civil Action No.  4:15-cv-127<br><br>COMPLAINT<br>*(Jury Trial Requested – Class Action)* |

Introduction

1.  Plaintiff James Heyman ("Mr. Heyman") asserts state law claims, individually and on behalf of all similarly situated individuals, seeking legal, equitable and pecuniary damages relating to Defendant's actions in the administration of a group long term disability insurance policy and systemic reduction of insurance benefits by Social Security disability benefits.

2.  The headings contained in this complaint are intended only to assist in reviewing the statements and allegations contained herein.  To avoid the unnecessary repetition in each section, Mr. Heyman hereby affirms and incorporates each paragraph in each section of this complaint as though fully set forth therein.

3.  The factual allegations contained in this complaint are not intended to be exhaustive and are presented solely so as to provide Defendant with the basis for Mr. Heyman's individual and class claims.

Jurisdiction & Venue

4.  Pursuant to 28 U.S.C. § 1332(d) and the Class Action Fairness Act, this Court has subject matter jurisdiction over Mr. Heyman's class claims asserted in this action against Lincoln.  The value of the class claims will readily exceed $5,000,000 and the aggregate class

size exceeds 100. In a similar proceeding pending before this Court,[1] Lincoln has represented that the class size will likely exceed 1,000. Given the value of Mr. Heyman's class claim (the Social Security disability benefits improperly deducted and alleged as an overpayment) is at least $31,368, the aggregate damages can be expected to exceed $31,368,000. Lincoln made a similar admission in the pending Kennedy Class Action.

5. Venue is appropriate in the United States District Court for the Southern District of Indiana pursuant to 28 U.S.C. § 1391. Lincoln can be found in this District, and related litigation is presently proceeding in this District.

## Parties

6. At all relevant times, Mr. Heyman was insured under a group long term disability insurance policy insured by Lincoln. Mr. Heyman obtained his disability insurance coverage while employed by Louisville-Jefferson County Metro Government, located in Kentucky. Mr. Heyman is a Kentucky resident.

7. At all relevant times, Lincoln was the insurer for the group long term disability policy covering Mr. Heyman. Lincoln is domiciled in the State of Indiana and may be found doing business in this District.

## Class Claims

A. Relevant Facts

8. Prior to becoming disabled, Mr. Heyman was employed by Louisville-Jefferson County Metro Government. As a public governmental employee, Mr. Heyman was insured under a group long term disability insurance policy ("Policy") insured by Lincoln.

9. The Policy covered Louisville-Jefferson County Metro Government employees and, in the event of a disability, provided a monthly income benefit equal to a percentage of the employee's monthly earnings.

10. Mr. Heyman became disabled and applied for benefits under the Policy.

---

[1] *See Kennedy, et. al. v. Lincoln National Life Insurance Company*, Civil Action No. 4:15-cv-99-TWP-DML ("Kennedy Class Action").

2

11. Lincoln agreed Mr. Heyman met the Policy definition of "Disabled" and commenced paying Mr. Heyman the monthly income benefit.

12. Lincoln subsequently failed to provide Mr. Heyman with his full monthly income benefit. Instead, Lincoln reduced Mr. Heyman's monthly income benefit by the amount of his Social Security disability benefit (both primary and family).

13. Lincoln further demanded Mr. Heyman repay an alleged overpayment based on his receipt of retroactive Social Security benefits.

14. Lincoln did not investigate to determine if Mr. Heyman's Social Security disability benefits were being paid for the same "Disability."

15. Lincoln did not inform Mr. Heyman that Social Security disability benefits are not transferable or assignable, and are not subject to execution, levy, attachment, garnishment, or legal process.

16. The Policy contained an *exclusion* (limitation) whereby the monthly income benefit otherwise payable could be reduced for "Other Income Benefits."

17. "Other Income Benefits" could only reduce the monthly income benefit if it resulted "from the same Disability for which a Monthly Benefit is payable under this Policy."

18. The Policy defined "Disability" as "Total Disability or Partial Disability."

19. The Policy defined "Partial Disability" as follows:

    1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee:

        a. is unable to perform one or more of the Main Duties of his or her Own Occupation; or is unable to perform such duties full-time; and

        b. is engaged in Partial Disability Employment.

    2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee:

        a. is unable to perform one or more of the Main Duties of any occupation which his or her training, education or experience will reasonably allow; or is unable to perform such duties full-time; and

        b.    is engaged in Partial Disability Employment.

20.    The Policy defined "Total Disability" as follows:

1.    During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.

2.    After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow.

The loss of a professional license, an occupational license or certification, or a driver's license for any reason does not, by itself, constitute Total Disability.

21.    Included within the Policy definition of "Other Income" were "disability benefits" actually *paid* by and *received* from "Social Security."

22.    Social Security does not provide disability benefits based on the *same* definition of "Disability" as Lincoln.

23.    Social Security's definition of "Disability" is as follows:

[T]he term "disability" means

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months, or

(B) blindness.

42 U.S.C. §416(i).

24.    Two years from the date Social Security disability benefits are paid, Social Security disability recipients are automatically enrolled in Medicare. Social Security monthly disability benefits are then reduced for payment of Medicare premiums. At that time, Social Security disability recipients only receive the reduced Social Security disability monthly benefit.

25. The right to receive Social Security disability benefits is not transferable or assignable. Further, Social Security disability benefits are not subject to execution, levy, attachment, garnishment, or legal process.

26. Lincoln does not conduct an investigation into whether Social Security disability benefits are being paid for the same "Disability." Instead, Lincoln automatically reduces the monthly income benefits paid to its covered insureds by the amount of the Social Security disability benefit.

27. Lincoln does not limit the reduction of monthly income benefits to Social Security disability benefits actually received. Instead, Lincoln reduces the monthly income benefits by the amount of the Social Security disability benefit, including the amount withheld for Medicare premiums.

28. Lincoln requires covered insureds to remit lump sum Social Security disability benefit awards on the basis that it claims monthly income benefits were previously overpaid.

29. In requiring remittance of retroactive Social Security disability benefit awards, Lincoln does not inform its covered insureds that Social Security disability benefits are not transferable or assignable, and are not subject to execution, levy, attachment, garnishment, or legal process.

30. Upon receipt of Social Security disability income benefits, Lincoln requires covered insureds to remit repayment of its alleged prior overpayments. In requiring repayment, Lincoln does *not*:

    a. inform its covered insureds that Social Security disability benefits are not transferable or assignable, and are not subject to execution, levy, attachment, garnishment, or legal process;

    b. limit its overpayment claim to the Policy limitations period which prohibits any action to three (3) years;

    c. limit its overpayment claim to applicable statutory limitations periods (i.e. Kentucky's two (2) limitation); and

      d.    inform its covered insureds that its overpayment claim may be time-barred under the Policy terms or applicable statutory law.

31. The relevant language and definitions in the Policy issued to Mr. Heyman's employer are consistent with all other group long term disability policies issued by Lincoln in the Commonwealth of Kentucky, as well as nationwide.

32. Lincoln's practices involving using Social Security disability benefits as a reduction to covered insured's monthly income is systemically applied across all of the disability insurance policies it issues.

B.  Class Allegations

33. This complaint is brought pursuant to Rule 23 of the Indiana Rules of Court as a class action seeking relief for Mr. Heyman and on behalf of all other similarly situated individuals.

34. The initial proposed Class definition is as follows:

> All individuals insured by a group disability insurance policy issued by The Lincoln National Life Insurance Company, and for whom during the applicable limitations period, (i) monthly income benefits were reduced by Social Security disability benefits; or (ii) an insured remitted Social Security disability retroactive benefits to Lincoln.

35. The proposed Class consists of numerous persons located throughout Indiana, Kentucky and the United States and is so numerous that the individual joinder of all members is impractical.

36. The disposition of the claims in a class action will provide substantial benefits to the parties and the Court by making more efficient use of limited resources including time and costs.

37. The exact number and identity of the proposed Class members will be properly determined through discovery, but it is expected that the number will exceed one thousand (1,000) individuals.

38. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to proposed Class which predominate over questions which may affect individual class members.

39. Mr. Heyman's class claims are typical of those of the proposed Class because he suffered the same injury as a result of Lincoln's actions and practices.

40. Absent a class action, the proposed Class members may not receive appropriate relief and will continue to suffer damages, and Lincoln's improper actions as alleged herein would continue unabated and without remedy.

41. Lincoln has acted or refused to act on grounds generally applicable to the proposed Class thereby making final injunctive relief, corresponding declaratory relief, and/or compensatory relief appropriate to the proposed Class as a whole.

42. Mr. Heyman is committed to pursuing this class action and has retained counsel experienced in class action litigation.

43. Mr. Heyman will fairly and adequately represent the interests of the proposed Class.

44. Mr. Heyman does not have interests which are adverse or conflict with those of the proposed Class.

45. The prosecution of separate actions by proposed Class members would create a risk of inconsistent adjudications establishing incompatible standards for Lincoln's actions and practices.

46. A class action is the superior method for fair and efficient adjudication of this controversy.

47. Because the damages suffered by the proposed Class members may be relatively small, the expense and burden of individual litigation makes it virtually impossible for Class members to individually seek redress for the wrongful conduct alleged herein. The likelihood that proposed Class members would individually prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

C.	Breach of Contract

48.	The Policy is a written contract and enforceable as such.

49.	Mr. Heyman and the proposed Class are entitled to the benefits of the contract, as well as to enforce its terms and conditions.

50.	Lincoln breached the terms of the contract by:

a.	reducing monthly income benefits by Social Security disability benefits despite the fact that Social Security does not pay benefits based on the Policy definition of "Disability";

b.	reducing monthly income benefits by Social Security disability benefits without conducting any investigation into whether Social Security had paid disability benefits for the same "Disability";

c.	reducing monthly income benefits by Social Security disability benefits without regard to the amount actually paid (i.e. where payments have been reduced by Medicare premiums);

d.	seeking and/or collecting alleged prior overpayments after the Policy limitations period has expired; and

e.	seeking and/or collecting alleged prior overpayments after the applicable state law limitations period has expired.

51.	As a result of Lincoln's breaches, Mr. Heyman and the proposed Class have suffered real and compensable damages.

52.	Mr. Heyman and the proposed Class seek all compensatory, equitable, declaratory, injunctive, and exemplary relief against Lincoln in an amount to be determined by a jury at trial to include costs, interest, attorneys' fees, and such other relief as is just and appropriate.

D.	Breach of Duty to Act in Good Faith

53.	Lincoln owed Mr. Heyman and the proposed Class a common law duty to act in good faith and fair dealing.

54.	Lincoln's actions and practices, as outlined herein, demonstrate that it breached its duty to act in good faith and fair dealing.

55. As a result of Lincoln's breach, Mr. Heyman and the proposed Class have suffered real and compensable damages.

56. Mr. Heyman and the proposed Class seek all compensatory, equitable, declaratory, injunctive, and exemplary relief against Lincoln in an amount to be determined by a jury at trial to include costs, interest, attorneys' fees, and such other relief as is just and appropriate.

E.     Unfair Claims Settlement Practices

57. In addition to a breach of the common law duty of good faith and fair dealing, Lincoln's actions and practices described herein demonstrate a violation of I.C. 27-4-1-4.5 which enumerates unfair claim settlement practices.

58. As a non-exhaustive list, Lincoln's violations include (i) misrepresenting the relevant facts and policy provisions; (ii) reducing monthly income benefits without conducting a reasonable investigation; (iii) failing to adopt and to implement reasonable standards for the prompt investigation of claimed benefit offsets; and (iv) requiring Mr. Heyman and the proposed Class to institute litigation to protect their Policy and legal rights.

59. As a result of Lincoln's violation, Mr. Heyman and the proposed Class have suffered real and compensable damages.

60. Mr. Heyman and the proposed Class seek all compensatory, equitable, declaratory, injunctive, and exemplary relief against Lincoln in an amount to be determined by a jury at trial to include costs, interest, attorneys' fees, and such other relief as is just and appropriate.

F.     Punitive Damages

61. Lincoln's actions were committed with the requisite mind set so as to entitle Mr. Heyman and the proposed class to an award of punitive damages under Indiana common law.

Prayer for Relief

62. Mr. Heyman requests the Court find Lincoln liable as to each claim asserted herein and award all available damages.

63. Mr. Heyman requests the Court find his claims constitute a valid and proper class action and certify his claims as a class action, appoint Mr. Heyman as a class representative, and appoint his attorneys as lead class counsel.

64. Mr. Heyman requests the Court award reasonable fees and costs incurred in this litigation, including expert witness expenses.

65. Mr. Heyman requests the Court award pre- and post-judgment interest at the greater of the prevailing prime interest rate or at a rate equal to Lincoln's internal rate of return.

66. Mr. Heyman requests the Court award any other relief the Court deems just, fair and proper.

67. Mr. Heyman requests leave to amend his claims, where and as necessary.

68. Mr. Heyman requests a jury for all issues which may so be tried

Dated:  September 3, 2015

Respectfully submitted,

s/ Michael D. Grabhorn
Michael D. Grabhorn
m.grabhorn@grabhornlaw.com
Andrew M. Grabhorn
a.grabhorn@grabhornlaw.com
Grabhorn Law Office, PLLC
2525 Nelson Miller Parkway, Suite 107
Louisville, KY  40223
p: (502) 244-9331
f: (502) 244-9334

*Counsel for Plaintiff James Heyman JAMES and the Putative Class*